## Commonwealth v. Angell

*Arnold W. Hirsch,* First Assistant District Attorney, for Commonwealth.

*Sigmund L. Bloom,* for defendant.

SWEET, P. J., March 22, 1967.—Eileen L. Angell was charged with a violation of section 505 of The Vehicle Code of April 29, 1959, P. L. 58, 75 PS §505, in that her car was bearing Wisconsin plates on August 6, 1965, at The Ranch on route 19 in North Strabane Township. It is clear that the act or thing occurred, i. e., Mrs. Angell's Plymouth coupe carried Wisconsin registration plate no. H33655 for 1965, on the day in question. It is likewise clear that the violation, if it was one at all, was of a defiant and objectionable nature in that she drove directly out onto the highway from the parking lot of The Ranch after having been told by a State policeman in uniform that she should not do so. Apparently, there had been an altercation of some sort at this establishment, and the State Police had been called. One gets the feeling this charge was made as a substitute for a charge of disorderly conduct. In view of the following, it is unfortunate that events developed as they did.

Mrs. Angell waived the case to this court in the office of a justice of the peace for North Strabane Township in August, 1965. The transcript did not reach the clerk of courts until December, 1966.

Mrs. Angell raises two defenses. First, she says that she was a domiciliary of Wisconsin when this arrest was made. At the time of the offense, she might have been able to make at least a colorable claim of being a Wisconsin citizen—colloquially, a "Badger". This would, of course, get her out of the provisions of the relevant sections, which specifically do not apply to nonresidents. She had been in Wisconsin in the spring of 1965, and her husband was still there. She substantiated this by the testimony of a neighbor and by a good handful of miscellaneous documentary proofs.

However, she has never returned to Wisconsin since August, 1965. Her child started school here in September, 1965, and her residence status as of the critical date is not quite clear. By hindsight, at least, we know she did not have the animo revertendi relative to her old Wisconsin home.[1]

However, there is a more clean-cut ground upon which to rest decision here. The Act of 1959, 75 PS §1205(b), provides as follows:

"Any person charged with violating any of the summary provisions of this act may waive summary hearing, and give bond in a sum equal to double the amount of the fine and costs that might be imposed, for appearance for trial before a judge of the court of quarter sessions, . . . and thereupon the magistrate shall, within fifteen (15) days, return the information to the said court".

In this instance, the magistrate, for reasons never made clear at either of the two hearings we held, delayed from late August, 1965, to December 9, 1966, in making his return.

As a result, the time gap between the appearances at the magistrate's court for waiver and for the hearing here was 17 months and 18 days, so the statutory period of 15 days was extended by about 17 months. At classical common law, one supposes this proceeding would be quashed for passing the "term return day", so Mrs. Angell has a little history on her side. However, there are three lower court cases which hold that the act requiring return of a complaint or a waiver within 15 days is only directory.

Commonwealth v. Lawell, 6 D. & C. 290, 40 Montg. 282 (1924), concerns a delay from August 29, 1924,

---

[1] For a better discussion of domicile than we can afford to enter upon here, see Restatement, Conflict of Laws §9, et seq., and comments thereon.

to September 16, 1924, a period of 18 days. Miller, P. J., held that the 15-day rule was directory only, but he weakened the force of the holding by concluding his opinion:

"We, therefore, seize upon the present case as an opportunity to direct the attention of the committing magistrates of the county to *this serious and growing evil* in the administration of justice in our county and to urge them hereafter to pay more heed to the law". (Italics supplied.)

At that time, the 15-day limitation was "new", having been enacted by the Act of June 14, 1923, P. L. 718. More recently, the Court of Mifflin County, Lehman, P. J., for whom we have the highest regard, has held that: "The provision that the transcript be filed in court within 15 days after hearing, or waiver of hearing, is merely directory and not mandatory. . . .": Commonwealth v. Joseph, 24 D. & C. 2d 771 (1961). That case, too, is unlike ours, at least in degree. In the Joseph case: "Defendant waived his hearing before the justice on January 18, 1960. The latter delivered his transcript of the case to the district attorney's office on January 21, 1960, where it remained until it was filed by the district attorney in the office of the clerk of quarter sessions on June 6, 1960". In short, the papers were very promptly returned to the courthouse, and the error which defendant raised was merely that the transcript was reposing in the District Attorney's office, rather than in the office of the clerk of courts. Judge Lehman rightly rejected such hairsplitting.

The decision that the 15-day time for filing is directory only has also been made in Commonwealth v. Recupero, 44 D. & C. 136 (1942), Pike County. In that case, the j. p. filed the transcript on the 16th day, rather than the 15th. Since, obviously, this is not a statute of limitations, we feel that the Recupero case

can be reconciled with the other view of this, the squire's noncompliance being de minimis.

We must also face our own unreported decision in Commonwealth v. Slain, November sessions, 1965, Q. S. of Washington County, no. 151, wherein we followed the above cited cases in an instance where the squire was 42 days late in forwarding the transcript. It might be noted that Slain was charged with speeding, an offense against safety, while Angell is only alleged to have violated a section which polices license revenues.

The cases cited hereinbefore where the 15-day rule was held to be directory and not mandatory all contain some element or other which moved the court to waive strict application of the rule. It should not be forgotten that there are two steps in the mental process. First, the court must determine that the 15-day rule is directory and not mandatory, and then it must have some reason to exercise discretion in favor of the Commonwealth. When a time limitation or other prescribed formality is held to be merely directory, it is not, ipso facto, void or unenforceable. We can say properly that the rule is directory only and not mandatory, but find that the magistrate's noncompliance is sufficient to vitiate the proceedings.[2]

To apply the rule of Commonwealth v. Lawell, supra, here, the Commonwealth should have the burden

---

[2] There are time limitations we cannot extend, e.g., the two-year statute of limitations, the 30-day appeal period on a license suspension (see Commonwealth v. Smith, 47 Wash. Co. 97 (1967)), the 45 days to appeal a misdemeanor to the Superior Court, etc. (See 9 Standard Pa. Prac. §10, p. 197.) There are other time limitations in the law that we may extend for cause shown or in the exercise of judicial discretion, e.g., the 60 days to join an additional defendant, the 20 days to file an answer, the 5 days for an alibi notice. Without complete research, we can think of no instance of a time limitation which we are required to extend.

of showing us some justification for this 17 months' delay on a 15-day notice. None has been presented. An examination of the statute here to be construed reveals that it is a substitute for the old law which required the return of offenses to the next term of court. Historically, the rule against passing the term return day was very strong.

The historical note at 42 PS §392, which authorizes justices of the peace to hold court, says this:

"In relation to criminal matters, the powers and duties of justices of the peace in Pennsylvania are the same as those exercised in England by the same class of officers at the time of the revolution, except so far as they have been altered by our constitution and laws. Every criminal offense is presumed to be within the scope of their authority to inquire into, take bail, or commit the accused, unless taken away by statute. In section 4 of the act for establishing courts of judicature in the province of Pennsylvania, passed 1722, May 22, 1 Sm. L. 131, it is provided as follows: 'The said justices, and every of them, shall have full power and authority, in or out of sessions, to take all manner of recognizances and obligations, as any justices of the peace of Great Britain may, can, or usually do; all of which said recognizances and obligations shall be made to the King, and his successors. And all recognizances for the peace, behaviour, or for appearance, which shall be taken by any of the said justices out of sessions shall be certified into their said general sessions of the peace, *to be holden next after the taking thereof;* and every recognizance, taken before any of them, for suspicions of any manner of felony, or other crime, not triable in the said court of quarter sessions of the peace and gaol delivery, shall be certified before the said justices of the supreme court of oyer and terminer, *at their next succeeding court to be holden next after the taking thereof,* without concealment,

detaining, or embezzling of the same' ". (Italics supplied.)

The background of this rule was discussed rather thoroughly in 1909 by Judge Van Swearingen of Fayette County in Commonwealth v. Sweetlick, 19 Dist. R. 397 (1909). It was there held that the acts of Parliament, 1 and 2 Philip and Mary, ch. 13, §4 (1554), and 2 and 3 Philip and Mary, ch. 10 (1555), ". . . are yet in force as part of the common law in Pennsylvania. . . ."

The Act of May 22, 1722,[3] provided that: " 'And all recognizances for the peace, behaviour, or for appearance, which shall be taken by any of the said justices out of sessions, shall be certified into their said general sessions of the peace, *to be holden next* after the taking thereof' . . . 'The accused must invariably be held to *the next term of court* following the hearing before the magistrate:' In re Criminal Proceedings in Pennsylvania, 13 Dist. R. 815". (Italics supplied.)

Although the term return day now seems to have disappeared, the policy behind it should be of more than a mere antiquarian legal significance. It should be a part of the liberty which our ancestors brought from England that a defendant not be bound over interminably. It is a permissible inference from the relevant legal history that the 15-day period provided in 75 PS §1205(b) is a substitute for the rule that defendant is to be bound over to the next term. This policy seems to run through the law of Pennsylvania: 19 PS §781.

Case law tends toward diminishing the rigid formalism of an earlier day, and we have already seen hereinabove that a return a day late or a few days late or a return made to the District Attorney's office, in-

---

[3] 1 Sm. L. 131, 42 PS §392. See also Sadler, Criminal Procedure in Pennsylvania, §125.

stead of the clerk's, has been held not to require quashing the proceedings. It seems to us by the analogy to the term return day rule that if the magistrate holds the transcript longer than a full term of court, say three months, the burden shifts to the government to justify the delay. As the delay grows greater, so must the justification increase. Mere inadvertence should not authorize the retention of a citizen's bond and the slight, but actual restraint on his liberty in being bound over to the quarter sessions. A summary offense should be brought to hearing at least as fast as an indictable offense. A delay of more than a term of court is excessive and raises a presumption that defendant is prejudiced thereby.

ORDER

And now, March 22, 1967, under these circumstances, we feel that defendant should be discharged. Costs on the county.